[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Eileen C. Christie, brought this action for a dissolution of the parties' marriage returnable to this court June 8, 1993. The first count of her complaint, which claimed that the defendant committed adultery, was withdrawn at the outset of trial, and the plaintiff proceeded on the second count, which alleged that the marriage had broken down irretrievably. The plaintiff also seeks custody and support of their minor child, alimony, an equitable distribution of the parties' assets and other relief as on file.
The defendant admitted all of the allegations in the second count and filed a cross complaint, also alleging that the marriage had broken down irretrievably. He sought joint custody and visitation of the minor child, an equitable distribution of the marital assets and other relief, as on file.
The parties were represented by counsel throughout the proceedings and, at the commencement of trial, stipulated that CT Page 10460 custody of the minor child Danielle be awarded to the wife, subject to reasonable rights of visitation to the husband.
The parties further stipulated in writing, among other things, to the sale of two boats and an antique automobile, and orally agreed to equally share the proceeds. They agreed that the child support, as recommended by the guidelines, (exclusive of defendant's overtime earnings) was to be $155 per week. They further agreed on values for two parcels of real estate, and that certain securities and a checking account were to be liquidated and divided equally. The parties remained divided on other financial issues, including the terms of the disposition of their property, the amount and duration of alimony and counsel fees.
Both parties testified and submitted financial affidavits and written proposed orders. In addition, the plaintiff's sister, friend and the defendant's female companion were called to testify by the plaintiff. At the conclusion of the hearing, the parties waived oral argument and the filing of briefs, but requested time to file a stipulation concerning the husband's pension benefits, which the court granted. The pension materials were filed.
Having heard the evidence, the court finds as follows.
The parties were married June 23, 1973, at Westerly, Rhode Island. The wife's birth name was Eileen Diehl. She has resided in this state continuously for at least one year before the filing of the complaint, May 24, 1993. They have one minor child, issue of the marriage, Danielle, borne June 2, 1978. Only one other child, Michael, was born to the wife since the date of the marriage. He is also issue of the marriage and has reached his majority.
Neither party or the minor child are recipients of public assistance; all statutory stays have expired and the court has jurisdiction.
The wife is 44 years old, a high school graduate with some computer courses, and in good health. She was the principal homemaker and caregiver to the children. She also worked various part-time jobs during the marriage. For the past six years, she has worked full time as a finance assistant for Mystic Seaport, doing payroll, accounts receivable and payable CT Page 10461 and other bookkeeping tasks. Her entry salary was about $16,000 per year. She now earns $415 per week gross and $295 per week net.
The husband is 46 years of age, a high school graduate with two and one-half years of college in mechanical engineering, and in good health. He has worked his entire career in the building trades as a sprinkler pipefitter. He is a union member and holds current journeymen's licenses in the states of Connecticut, Rhode Island and Massachusetts. He was subjected to a number of long lay offs in the past, but none since 1990. He currently earns $996 per week gross and $672[1]
per week net without overtime.
The wife testified that the marriage broke down mainly because of the husband's drinking to excess, some sporadic acts of physical violence, a "telephone-letter" affair with a high school classmate, whom he hasn't seen since the early 1970's, and finally, an affair with his present female companion which began before the parties finally separated.
The husband denied that he had a drinking problem and points to the fact that he has never lost time from work and has never been arrested for driving under the influence. He claims that the cause of the disintegration of the parties' marriage was their failure to communicate, sharp differences between them concerning the discipline of their children, and several long periods (one year or more) without sexual relations. He also described disputes the parties had over financial matters. The parties attempted marriage counseling. The wife attended Al-Anon and half-heartedly pursued alcohol treatment for her husband, but did not follow through. She obtained a restraining order in May, 1993, and the husband was required to reside in the basement of the family home. After another argument between the parties, which became physical, the wife obtained a second order in August, 1993, which required the husband to leave the house. The couple has been separated ever since, and the husband now resides with his female companion.
On this evidence, it is clear that the marriage has irretrievably broken down. I find that both parties have substantially contributed to the disintegration of their marriage by their actions and behavior, but the husband must bear a larger share of the responsibility for its destruction. CT Page 10462
The parties have accumulated significant assets. They commingled their earnings. Their jointly-owned family home, 411 Lantern Hill Road, Mystic, Connecticut, by their agreement, is valued at $185,000. After deducting the outstanding first mortgage balance of $14,000 and a home equity loan balance of $21,500, secured by a second mortgage, it has an equity of $149,500. The parties obtained this house by purchasing the land for $9,000 from the profits from the sale of their prior home. The remaining profits and a construction mortgage of $20,000, which was later refinanced to $25,000, were used to build the house, largely through the husband's efforts. He subcontracted some work such as the foundation and sheet rock and built most of the rest with help from his friends. The wife also contributed by doing some painting, staining and cooking for him and his crew.
No. 53 Hillside Road, Groton, Connecticut, the parties agreed, has a value of $90,000, less a mortgage balance of $16,000. The husband's undivided one-half interest is worth $37,000. His brother owns the other undivided one-half interest, and their mother resides there rent free, while the brothers share the mortgage payments. The husband's share has been paid by him out of family funds. The husband's mother conveyed the real estate to her sons and received $20,000 in cash, from a mortgage for $60,000 which the sons placed on the premises. Therefore, the transfer of the one-half interest to the husband was part gift, part purchase. Each son received $20,000 from the mortgage proceeds also, and the husband used his portion to purchase the 1987 Buick now driven by the wife.
The parties report two boats and an `antique' 1957 Chevrolet on their financial affidavits and disagree on their values, however, they have agreed upon their disposition. The wife reports her household furnishings and furniture to be worth $6,250, his Ford truck to be worth $8,000,[2] his tools, plumbing supplies, fishing and other equipment she reports to be valued variously between $27,500 to $37,000, while the husband values the tools and related items at $2,101 and the household furnishings at $14,025.
The parties have also agreed that a joint federal credit union account of $400 and some Bank of Mystic and Royce Investment Securities valued in the aggregate at almost $3,000 were to be liquidated and the proceeds divided equally. CT Page 10463
The husband reports the following additional assets: his union supplemental pension of $73,000;[3] his vested union pension of $34,400, for which he requires "1.3 pension credits" additional to be eligible for pension options and early retirement;[4] a New York Life insurance policy with cash value of $8,000, before a loan of $2,500, to net $5,500; mutual funds of $2,950 and his Liberty Bank IRA of $9,676.
The wife reports a Liberty Bank IRA of $2,000; a Norwich Savings Society bank account of $2,000, and a retirement benefit of $6,000.
The court finds that the value of the household furnishings retained by the wife and of the vehicle driven by her are approximately equal to the value of the miscellaneous tools, plumbing supplies, fishing equipment and vehicle retained by the husband. The court does not consider the value of the 1988 Ford truck which Michael uses in the determination of its awards and notes that the husband is also contributing to Michael's college education.
The court also finds that the wife is in possession of an insurance company check in the amount of $1,081 payable to the couple on account of damages to the home. This was not reported on her financial affidavit; nor were the repair bills or estimates reported.
I also find an arrearage due the wife from the husband on account of a pendente lite order relating to taxes to be in the amount of $1,335.
The court finds that the husband's monetary contributions, including the partial gift from his mother, to the acquisition, preservation and appreciation value of the parties' assets were substantially greater than that of the wife and that the wife's non-monetary contributions in homemaking and child rearing were substantially greater than the husband's.
The wife's claim for permanent alimony, indefinite in duration, was later limited by her to ten years.
I also find that the husband has had superior earnings than the wife has, and his earning capacity is greater than hers, although her salary has increased over the past five years. He has a greater opportunity than she has to acquire CT Page 10464 capital assets and income in the future.
I have considered the evidence and my findings in the light of the factors in General Statutes §§ 46b-62, 46b-81,46b-82 and 46b-84. I have also considered the tax implications and consequences of the financial awards set forth below and the stipulations and agreements entered into by the parties.
Accordingly, judgment may enter dissolving the parties' marriage on the ground of irretrievable breakdown.
It is further ordered that:
(1) Custody of the minor child, Danielle, shall be with the plaintiff mother, subject to the defendant father's reasonable rights of visitation. The parents shall participate in the Parenting Education Program, pursuant to 1993 Public Acts, No. 93-319.
(2) The father shall pay as child support the sum of $155 per week which amount is that suggested by the child support guidelines. As supplemental child support, he shall also pay twenty (20%) percent of his net disposable weekly overtime pay which sums shall be determined by the same methodology used in determining the base sum above. The supplemental child support shall be paid promptly after each weekly pay period. He shall not less than quarterly provide the wife with copies of his pay stubs. He shall have the dependency exemption for said child for income tax purposes. The child support orders are pursuant to 1994 Public Acts, No. 94-61(b).
(3) The father shall maintain through his place of employment or through his union, as applicable, health insurance for said child, and the parties shall equally share the unreimbursed uncovered expenses for said child, including any orthodonture bills accruing after the date of this decree. An order pursuant to General Statutes § 46b-84(c) shall enter.
(4) The husband shall transfer all his right, title and interest in and to the family home known as No. 411 Lantern Hill Road, Mystic, Connecticut, to the wife, subject to all encumbrances thereon, including the first mortgage and home equity loan, which she shall pay and save him harmless therefrom. CT Page 10465
(5) The wife shall take, have and own the following property, free of husband's claims, the 1987 Buick motor vehicle; the household furnishings (except as set forth below); a set of tools; her IRA with Liberty Bank of $2,000; her Norwich Savings Society account of $2,000; her TIAA/CREF account of $6,000; and the sum of $12,500 which shall be transferred from the husband's supplemental pension plan and vested in her as of the date of this decree by Qualified Domestic Relations Order (QDRO). She shall also be designated the survivor beneficiary of his union pension by QDRO. The court retains jurisdiction over the QDROs until accepted by the pension plan administrator.
(6) The husband shall take, have and own, free of wife's claims, the following property: his one-half interest in No. 53 Hillside Road, Groton, Connecticut; his New York Life insurance policy cash value of $5,500 (subject to the provisions set forth below); his pension and the remainder of his supplemental pension (after the $12,500 set out to wife above) his tools, equipment, plumbing and building supplies and fishing equipment, all as set out on Schedule B attached to his proposed orders (excepting the set of tools to the wife); his father's workbench; the "break down shelving", the antique phone and elevator indicator; his mutual funds of $2,950 and Liberty Bank IRA of $9,676; the 1989 and 1988 Ford trucks, with the understanding that the truck driven by Michael shall continue to be used by Michael.
(7) The husband shall pay to the wife, as periodic alimony, deductible by him and taxable to her, the sum of $100 per week, which shall be automatically increased to $150 per week on June 2, 1996, or when Danielle graduates high school, whichever occurs later, but in any event, no later than June 2, 1997. Said alimony shall terminate upon the death of either party, the wife's remarriage, pursuant to General Statutes46b-86(b) or October 1, 2002.
(8) In accord with the parties' stipulation, the boats and associated trailers, if any, and the 1957 Chevrolet shall be sold by the husband at prices not less than 80 percent of their appraised values: Eileen C., $2,800;[5] 23' International, $3,500; trailer, $500; 1957 Chevrolet, $9,500; or any other prices agreeable to them in writing. The proceeds shall be equally divided, and by written consent of the wife, the husband may incur expenses for repairs of said items, for which he shall be reimbursed from the sale proceeds. CT Page 10466
(9) The Royce funds, including the five Plastigon Care Group and Bank of Mystic stock and joint credit union account shall be liquidated and the parties shall equally divide the net proceeds thereof.
(10) The Kemper Insurance check of $1,081 shall be equally divided, as the wife's evidence of the amounts of claimed repairs was not persuasive.
(11) The husband shall irrevocably designate the wife as beneficiary of his New York Life and Union life insurance policies so long as he is obligated to pay child support or alimony hereunder and he shall provide for no less than $45,000 in death benefits thereon, in the aggregate. He shall execute and deliver authorizations to the wife so that she may from time to time determine the status and good standing of said policies.
(12) The husband shall pay to the wife the tax arrearage of $1,335 by equal monthly payments of $100 until paid.
(13) The child support and alimony payments set forth above shall be secured by immediate wage garnishment and paid directly to the wife. The additional child support due from the husband's overtime pay, if any, shall be paid by him directly to the wife.
(14) Each party shall pay their own attorney's fees. The court cannot find that a failure to award counsel fees would impair or undermine the other financial awards entered.
(15) All documents of title and other instruments necessary or incidental to the effectuation of these orders shall be completed and exchanged within thirty (30) days hereof.
Teller, J.